## Rammage v. Kendall, et al.

(Decided January 21, 1916.)

### Appeal from Livingston Circuit Court.

Officers—Acting Without Jurisdiction—Action Against for Damages.—If a judicial officer acts without the scope of his jurisdiction he is liable for the injurious consequences of his acts, regardless of what motives actuated him. If his motives are corrupt, impure or malicious, this fact may be considered in aggravation of damages.

BERRY & GRASSHAM for appellant.

CHARLES FERGUSON and A. C. MOORE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Clyde Rammage, was called to testify as a witness in an examining trial of a young man, who was charged with the crime of seduction, and which trial was being held before the appellee, Kendall, as the judge of the county court. In the testimony, which he gave upon his examination as a witness, by the attorney for the accused, he stated that he had had sexual intercourse with the young woman, who was alleged to have been seduced by the accused, upon two different occasions, each of which occurred more than one year previous to

the time of the giving of his testimony. According to the appellant and a number of witnesses, whom he introduced, when the examination in chief had been concluded, and he was turned over to the county attorney for cross-examination, the county attorney says to him: "You don't mean to say that you had sexual intercourse with this woman?" He answered that he did. The county attorney then says: "Will you enter a plea of guilty to this court?" The appellant says: "No, I am guilty of doing what I said I did, but I am not before the court." The county attorney then, in a very boisterous tone and manner, demanded to know if he was going to enter a plea of guilty, and repeated the question two or three times, and the appellant continued to insist that he was not upon trial. The appellant then turned to the appellee, who was presiding upon the trial, and asked for information, saying that he did not understand the question, and that "I am no lawyer and do not understand what he wants." According to other witnesses, the appellant answered the repeated demands of the county attorney to know if he pleaded guilty, by saying: "I am guilty of doing what I said I did, but I am not on trial. I am not on trial, if you want to try me, get out your papers." When the appellant appealed to the appellee for information, the appellee directed him to answer, and said that the county attorney wanted to know if he plead guilty to fornication. When appellant said that he was guilty of what he said that he had done, then the county attorney says: "You say you are guilty do you?" Then addressing the appellee, the county attorney says: "Fine him fifty dollars, give him the limit." In the meantime, the attorney who was representing the accused upon the trial, took a hand and protested that appellee had no authority to impose a fine upon appellant; that he was not upon trial; had not been arrested nor charged with any offense; and that a prosecution for the acts of fornication, to which appellant had testified, was barred by the statute of limitations; and that if it was proposed to try the appellant, to issue the proper papers, and he would defend him; and advised the appellant not to answer the demand of the county attorney to know if he plead guilty to fornication. The appellee then, addressing the appellant, said, "I will fine you fifty dollars," and then directed him to take a seat to one side in the room. Appellant sat at the place designated for

about three hours, when the appellee delivered a mittimus to the jailer of the county, directing him to commit appellant to jail, in default of his paying off and satisfying the fine and costs or replevying the same. The appellant was committed to jail and remained there for several hours, when he executed an appeal bond and obtained a supersedeas to issue and got out of jail. The appellee, as though he was holding a quarterly court, entered a judgment in favor of the Commonwealth against appellant for the fine and costs, upon the records of the quarterly court, and this judgment was reversed and the appeal dismissed upon the trial of the appeal by the circuit court.

The appellee, Kendall, testified, in substance, that appellant, when being cross-examined as a witness, said that he had intercourse with the woman twice in January, March, February or April, and the county attorney then asked him: "If he acknowledged he had committed the crime of fornication, and he said he didn't understand the question, and Ferguson (county attorney) asked him again, and he still said he didn't understand the question, and appealed to me then to put the question to him so he could understand it, then I told him the best I could, and told him to answer the question." Appellee further testified as follows:

"Well, after I told him what it was, he said he would acknowledge to it, to the crime of fornication, and Mr. Wilson put in and says, 'You are not on trial, and you can't try this man, you can't try him, because he is not under arrest and there is no warrant for him,' and I says, 'Mr. Wilson, he has acknowledged to the crime of fornication, and I will assess the fine on him,' and Mr. Wilson says, 'You can't try this man, he is not on trial and you can't assess a fine against him.' I says, 'I will, he has owned to it, and I will assess the fine on him,' and Mr. Wilson says, 'If you fine this man, I will show you what I will do for you,' and there was never any demand for this man for a trial at all, he never asked for it; this man didn't call on me for a trial. Q. Did he or not call for a jury? A. No, sir, and didn't ask me for a trial, at all. Mr. Wilson was complaining though, said he wasn't on trial all the time. Q. I will ask you to state why you assessed the fine against him? A. Well, sir, the reason I assessed the fine the statute says whoever commits fornication or adultery shall be fined twenty to fifty dollars.

Ferguson suggested that I assess the fine at fifty dollars. Q. What, if anything, had Mr. Rammage said that caused you to assess the fine against him? A. Hadn't said nothing, only acknowledged to fornication; he never denied it at all. Q. Now, by way of refreshing your recollection, Judge, I will ask you if Mr. Rammage didn't use the language, after you had made the explanation to him, 'I do plead guilty to the crime of fornication'? A. Yes, sir, he did."

The appellee, further, stated that no one said anything about the acts of fornication being barred by the statute of limitations, and that he did not think of it.

The county attorney testified, in substance, that after asking the appellant two or three times if he meant, in his testimony, to tell the court that he was guilty of fornication, and appellant had answered evasively, and said that he was guilty of what he said he did, he then said to him, "I tell you now, I don't care whether you plead guilty or do not plead guilty, but I want to know whether or not you would enter the plea of guilty in this court to the crime of fornication?" and he turned to the judge and said something about not understanding—Mr. Wilson making a great deal of noise at the time—and the judge made some explanation, and asked him if he would enter a plea of guilty to the crime, and the way he answered, as I remember, he says, "Yes, I do plead guilty."

Other witnesses, to a greater or less extent corroborated the statements of appellee and the county attorney.

The appellant brought this suit against appellee and the sureties in his official bond, alleging that under color of his office, as county judge, the appellee, maliciously, wantonly, without cause, and without the appellant being brought before him upon a warrant, and when he had no jurisdiction of appellant or the subject matter, imposed the fine upon him and gave the order for his imprisonment, and prayed a judgment against appellee for the sum of $5,000.00 in damages.

By agreement between the parties, in the court below, it was agreed, that any judgment against the appellee, Kendall, should be rendered against the other defendants who were the sureties in his official bond, and hence, in this opinion only the appellee, Kendall, is referred to.

The appellee denied the allegations of malice, wantonness, and want of cause, and want of jurisdiction, and plead that the appellant voluntarily appeared before

him, entered his appearance to the accusation of fornication, and a plea of guilty to it, and that he imposed the fine and gave the order for his imprisonment, as it was his duty, and in all of which he acted from the purest of motives. The affirmative allegations of the answer were controverted.

At the conclusion of all the evidence the appellant offered an instruction, by which the jury was, in substance, directed "to find for the appellant such sum in damages as would compensate him for any humiliation he may have undergone, or for any physical or mental pain or anguish suffered by him by reason of him being taken charge of by the appellee, committed to jail and his imprisonment in the jail, not exceeding the sum claimed in the petition." To the giving of this instruction, the appellee objected, and the court sustained the objection, to which appellant excepted.

The court, over the objection of appellant, gave to the jury four instructions to guide it in making its verdict.

By the first instruction the jury was directed, that if it believed from the evidence that appellee, Kendall, while acting as county judge, maliciously, wantonly, or without issuing a warrant for the arrest of appellant, and without appellant having first voluntarily entered his appearance and a plea of guilty to the charge of fornication, entered a judgment for a fine of fifty dollars against appellant, and upon such judgment issued a mittimus, under the authority of which appellant was confined in the jail, to find for him such damages, if any, as he sustained by reason of the imprisonment, not exceeding $5,000.00, the sum claimed in the petition.

By a second instruction, the jury was correctly advised as to the measure of compensatory damages to which appellant was entitled, in the event of his recovery.

The third instruction defined malice, as applied to the facts of the case.

By a fourth instruction, the jury was advised, that although it might believe from the evidence that the appellee maliciously, wantonly, and without issuing a warrant for the arrest of appellant, entered the fine against him complained of and upon which he was imprisoned, yet, if it should further believe from the evidence that at the time he did so, or just prior thereto, the appellant, in open court, entered his plea of guilty to the charge of fornication made against him before the appellee, in

open court, and consented to the entering of the fine under the plea of guilty, it should find for the appellee.

Under these instructions the jury found a verdict for appellee, and judgment was rendered accordingly and the petition dismissed.

The appellant seeks a reversal of the judgment upon three grounds:

First: Because the court failed to properly instruct the jury.

Second: Because the court misinstructed the jury.

Third: Because the court should have rendered a judgment for appellant upon the verdict returned by the jury, instead of requiring it to correct its verdict, and then rendering a judgment for the appellee.

Where the petition states a cause of action and all the evidence tends to support the cause of action alleged, and when it tends to disprove the facts relied upon for a defense, it is elementary, to say, that the court should have peremptorily instructed the jury to find a verdict for the plaintiff, and should not submit to the jury an issue made in the pleadings, when all of the evidence goes to support or all of it goes to disprove the matter about which the issue is made in the pleadings, as there is nothing to submit to the jury for its decision in such state of case.

There is a general principle of universal application to all grades of judicial officers, that a judge, who is proceeding within the scope of his jurisdiction, is not liable in an action for damages for the opinion he may deliver as such judge, nor for any rule or action he may take for the conduct of the business of his court. This principle, however, does not extend to make a judicial officer immune from damages for illegal acts, which result in injuries to others or deprive them of their legal rights, when his acts are without the scope and limits of his jurisdiction. It follows, that if his illegal acts are without the scope and limits of his jurisdiction, he is liable, if damages result to others from such acts, whether he is actuated by malice, corrupt and impure motives or not. In the last state of case, the fact that his motives are impure and bad are considered, only, as aggravating the damages. When the judge acts illegally, without the limits of his jurisdiction, he becomes a trespasser, and is liable in damages as such. Morgan v. Dudley. 18 B. M., 567; Revill v. Petit, 3 Met., 287; Kennedy v. Terrill,

Hardin, 491; Ayars v. Cox, 10 Bush, 207; Hollon v. Lilly, 100 Ky., 559; Pepper v. Mayse, &c., 81 Ky., 674; Ely v. Thompson, 3 A. K. M., &c., 70; Gregory v. Brown, 4 Bibb., 28; Tabb v. Mudd, 6 R., 220; Reed v. Taylor, 25 R., 1793; Stephens v. Wilson, 115 Ky., 27; Scott v. West, 1 Bush, 23; Blincoe v. Head, 103 Ky., 106; Glazer v. Hubbard, 42 S. W., 1114; McBuneis v. Sullivan, 152 Ky., 686.

Cooley on Torts, pages 416-417, says:

"A judge is not such at all times and for all purposes; when he acts he must be clothed with jurisdiction; and acting without this, he is but the individual falsely assuming an authority he does not possess. The officer is judge in cases in which the law has empowered him to act, and in respect to persons lawfully brought before him; but he is not judge when he assumes to decide cases of a class, which the law withholds from his recognizance, or cases between persons who are not, either actually or constructively before him, for the purpose."

The appellee, as county judge or judge of the quarterly court, had, without doubt, jurisdiction to try one upon the charge of fornication, if such person was lawfully before his court for that purpose by some one of the methods, provided by law. It was, however, necessary that appellee should have jurisdiction of the appellant, as well as the subject matter of the charge, before he is authorized by law to try and render a judgment against him. To hold otherwise would be to empower judges, in exparte proceedings, when they became satisfied that some one had committed a public offense, to impose a punishment upon such person, in his absence and without his knowledge. It would be to deny to a citizen, absolutely, his constitutional right to have his day in court and due process of law. That the one upon whom a punishment is imposed, without the formality of due process of law, is actually guilty of the offense for which the punishment is imposed, is aside from and does not effect the question. From the time of Magna Charta until now, judges, nor any other authority, have had power to take from one his goods or to deprive him of his liberty, except in accordance with and by the laws of the land. For the orderly and uniform administration of justice, and to protect the citizens in their property, lives and liberties, the laws have provided that certain requisites must exist before jurisdiction of

individuals can be taken, and before jurisdiction of the subject matter of their controversies can be assumed by the courts. In civil actions the courts receive jurisdiction to try and determine the controversies between individuals, and the jurisdiction of the parties and the subject matter, when the plaintiff files his action in the court and causes the defendant to be summoned to answer his complaint, as provided by the law. Section 1141, Kentucky Statutes, provides, that misdemeanors, the punishment for which is a fine not exceeding one hundred dollars and imprisonment not in excess of fifty days, may be prosecuted by warrant, as provided in the Criminal Code, or by information filed by the Commonwealth's Attorney, or County Attorney, in the circuit court, or before the county judge, or a justice of the peace, or police or city judge. The information must be in writing and signed by the officer who files it, and then a summons or warrant must be issued for the offender, commanding him to appear within three days and be tried for the offense. The Criminal Code and Statutes provide for the prosecution of misdemeanors by indictment and by warrant, and, in certain classes of misdemeanors, by penal actions, but the proceedings all require the charge to be made in writing, and a summons to be served or a warrant to be executed upon the accused, in which he is charged with the offense, and time enough must transpire before the trial to give him a reasonable opportunity to prepare and make his defense. It is true that the Criminal Code provides, that if an offense is committed in the presence of a peace officer, it is made the duty of the officer to arrest the offender and take him before the county judge or justice of the peace, to be dealt with according to the laws, and if an offense is committed in the presence of a magistrate, he may orally order the arrest of the offender. If an arrest is made, by a peace officer, of one committing an offense in his presence, he must take him at once to a magistrate and there state the grounds of his arrest. These are the only two instances in which a county judge or justice may have jurisdiction of an offender, except when a warrant, summons, penal action or information is filed against him, and he is served with a summons or warrant; or where an indictment for a misdemeanor is transferred to the county court by order of the circuit court; or when indicted for a misdemeanor is in jail in default of

bail. If a warrant, summons, penal action or information
were pending against an offender, for an offense, within
the jurisdiction of a county judge, the accused, no doubt,
could voluntarily appear and enter his appearance to
the prosecution, and then the judge would have jurisdic-
tion of the subject matter and the parties. Doubtless,
also, one might appear voluntarily before a county judge
and waive the fact that there was no warrant, summons,
penal action or information or indictment there pending
against him, and enter a plea of guilty of some misde-
meanor within the jurisdiction of the judge, and agree
that the judge might there summarily try him for the
offense, and accept a fine or imprisonment imposed
upon him, and thereafter would be estopped to complain
of the action of the judge, so far as the offender himself
is concerned.

The appellant was not before the appellee upon any
warrant, summons, penal action nor information, which
charged him with any offense. The offense was not com-
mitted in the presence of the appellee, nor in the pres-
ence of any peace officer, who arrested him and brought
him before appellee for the purpose of a trial of the
charge. There was no evidence offered, which remotely
tended to prove that appellant waived the absence of any
process or charge against him, and voluntarily entered
his appearance to the charge or consented to be tried
upon the charge or entered a plea of guilty to the charge,
for the purpose of a trial, or was present there for the
purpose of being tried upon the charge. In fact, there
was no charge made against him in any of the ways pro-
vided by law, and no one pretends that he waived the
forms of law for the purpose of getting a fine imposed
upon him. No evidence was offered tending to show that
any explanation was made to him that it was the pur-
pose of the county judge and county attorney to try him
there summarily, or that he understood that there was
any purpose to put him upon trial. The appellee does
not pretend that appellant ever consented to be tried,
but, upon the other hand, is explicit in his statement that
he did not request to be tried at all, and appellee was
without authority to try him against his consent, unless
he proceeded in some way provided by law to obtain
jurisdiction of him and the offense, but the result of the
acts of appellee was to imprison appellant for an offense
of which he could not be lawfully convicted. The court

was, therefore, in error when it overruled appellant's motion to peremptorily instruct the jury to find for him, and gave instructions one and four to the jury. It is unnecessary to discuss the third ground relied upon for reversal, as it will not probably occur again.

Upon another trial, if the evidence is substantially the same as is contained in the record, the court should peremptorily instruct the jury to find for appellant in a sum not exceeding the amount sued for; and will then by an appropriate instruction, advise the jury as to the measure of damages in the case.

For the reasons indicated the judgment is reversed and the cause remanded for proceedings consistent with this opinion.