58 So.2d 534 (1952)
FARISH
v.
SMOOT.
Supreme Court of Florida, en Banc.
March 28, 1952.
Rehearing Denied May 23, 1952.
*535 Paty, Warwick, & Paul and Farish, Farish, Downey & Anderson, all of West Palm Beach, for appellant.
Baynes, Garman & Phillips, West Palm Beach, for appellee.
SEBRING, Chief Justice.
The defendant below has appealed from a judgment entered in favor of the plaintiff in a suit brought to recover damages for false imprisonment.
The admitted facts of the case are that the defendant was the municipal judge of the City of West Palm Beach. On August 12, 1949, the plaintiff was arrested by the City on a charge of violating a municipal ordinance. Trial on the charge was set for a later date and plaintiff was released from custody after posting with the municipal clerk a $500 cash bond conditioned that he appear at the trial. Thereafter, on August 15, 1949, the plaintiff voluntarily surrendered to the police authorities of the City and thereupon filed with the Circuit Court of Palm Beach County his petition for a writ of habeas corpus attacking the sufficiency of the warrant and the validity of the ordinance under which he had been arrested. On the same day the Circuit Judge issued a writ of habeas corpus wherein he set the following day as the day for a hearing on the merits of the petition and ordered the release of the plaintiff from the custody of the municipal authorities upon his filing with the Clerk of the Circuit Court a bond in the sum of $500 payable to the Governor of Florida.
*536 Shortly after noon on the day the writ was issued, the city attorney of West Palm Beach informed the city clerk by telephone that a writ of habeas corpus had been issued by the Circuit Judge conditioned upon the plaintiff's posting bond with the Clerk of the Circuit Court in the sum of $500. He advised the city clerk to release to the plaintiff the $500 in cash which had been deposited by him as an appearance bond in the municipal court proceeding. Immediately after this conversation the city clerk took the $500 to the office of the Clerk of the Circuit Court and deposited it there on behalf of the plaintiff to stand as a cash bond in the habeas corpus proceeding. Soon after the deposit was made the plaintiff was released by the police officials of West Palm Beach and went at large under the habeas corpus writ.
Later in the afternoon the municipal judge learned that the city clerk had released the appearance bond given to the City and that the plaintiff was not in custody. Thereupon, he ordered the rearrest of the plaintiff upon the same charge as was the subject of the inquiry in the habeas corpus proceeding and directed that the plaintiff be taken into custody and retained until another appearance bond was posted with the City. Acting upon the order given by the municipal judge, the police officials immediately placed the plaintiff in jail, where he remained until the following morning.
Subsequently the plaintiff brought suit against the municipal judge and the arresting police officers; the gist of the charge being that the municipal judge had ordered the rearrest of the plaintiff, and the police officers had taken him into custody, with knowledge that plaintiff had been released on the habeas corpus bond by the Circuit Court; that as a consequence thereof the plaintiff had been "wrongfully, unlawfully, maliciously, wilfully and oppressively, without any reasonable or probable cause, and in utter disregard of [his] * * legal and constitutional rights, placed * * under arrest against his will and without legal process, and incarcerated * * * in the City jail of West Palm Beach, Florida * * *."
A trial on the issues made by the declaration and the pleas addressed thereto was had, resulting in a verdict of not guilty against the police officers and a verdict of guilty against the municipal judge. Motions for a new trial were denied and a judgment was entered against the judge. The judge has appealed from the judgment.
Many grounds are urged by the defendant for the reversal of the judgment. Most of them are based upon the contention that no evidence was adduced at the trial to show that the municipal judge, at the time he ordered the rearrest of the plaintiff, knew that the plaintiff was then entitled to be at liberty under the habeas corpus writ.
In respect to this contention, a careful review of the evidence shows that the municipal judge knew of the institution, pendency and purpose of the habeas corpus proceeding. The evidence also shows that prior to the rearrest of the plaintiff, the judge had been informed by the City Attorney that a hearing on the petition for the issuance of the habeas corpus writ had been held before the Circuit Judge and that a writ had been issued returnable the following day. He had been informed by the City Attorney that a bond had been fixed in the habeas corpus proceeding in the sum of $500. He had been informed by the City Attorney of his conversation with the municipal clerk directing her to turn the $500 over to the clerk of the Circuit Court, so that the habeas corpus writ might be made effective. He had been informed by the Attorney "that Mrs. Gardner's office [the clerk's office] had gone to the Courthouse about that time with his [the plaintiff's] cash bond." He had been told by the City Attorney "that the bond, as far as the City was concerned, was turned in when the Circuit Court bond was made and therefore, the City did not have any bond, but we were protected by the Circuit Court bond * * * that I did not think the City had any right to insist on another bond because there was a Circuit Court bond."
The evidence shows that after the municipal judge received this information he called Mrs. Gardner, the City Clerk, and was told by her that the bond posted with *537 the City had been taken down upon the instruction of the City Attorney. Although the avowed purpose of his call was to learn from her the facts and circumstances surrounding the releasing of the bond posted with the City, the municipal judge made no effort, according to his own testimony, to learn from the Clerk whether in pursuance of the instructions given her by the City Attorney she had in fact actually deposited the bond money with the Circuit Court Clerk as she had advised the City Attorney she intended to do immediately; the reason for his failure to ask the question of the clerk being, "I had no reason to ask her."
After these conversations with the City Attorney and Clerk, the municipal judge, without making further inquiry into the question whether the habeas corpus writ had become effective by the posting of a bond with the Clerk of the Circuit Court, ordered the rearrest of the plaintiff. Pursuant to this order the plaintiff was placed in jail, at a time when all jurisdiction of the municipal court over the subject matter of the charge and over the person of the plaintiff had in fact become suspended or superseded by virtue of the habeas corpus bond having been posted. See State ex rel. Gallat v. Allen, 82 Fla. 149, 89 So. 398.
Under these facts we think that the jury was fully warranted in finding that the defendant, with full knowledge of the facts, had wilfully ordered the rearrest of the plaintiff at a time when the plaintiff was lawfully at large under a valid and effective writ of habeas corpus; for the picture presented by the evidence was that of a judicial officer who, though having eyes with which to see and ears with which to hear, wilfully failed and refused to inform himself fully in respect to the facts at a time when the slightest inquiry on his part would have revealed that the order he had determined to make would be in a case as to which he then had no jurisdiction, either as to the subject matter of the charge or the person of the accused, because of the issuance of the writ of habeas corpus and the filing of the bond upon which it was conditioned to become effective.
The rule is that whatever is sufficient to put a person on inquiry amounts in point of law to notice, provided the inquiry becomes a duty and could lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a person on inquiry, notice will be imputed to him if it is made to appear that he has designedly abstained from inquiry for the purpose of avoiding notice. 66 C.J.S., Notice, § 10, p. 642. If facts with respect to his jurisdiction are brought to the attention of a judicial officer about which he can have no doubt, and he knows or is bound to know that on these facts the court over which he presides has no jurisdiction of the controversy, or of the person of the accused, he may well be held to proceed at his peril. See Telefsen v. Fee, 168 Mass. 188, 46 N.E. 562, 45 L.R.A. 481; Vaughn v. Congdon, 56 Vt. 111, 48 Am.Rep. 758, Clarke v. May, 2 Gray, Mass. 410; Duffin v. Summerville, 9 Ala. App. 573, 63 So. 816, Certiorari Denied, Ex parte Summerville, 187 Ala. 403, 65 So. 779; 18 Am. & Eng. Encyc. Law (2d Ed.), p. 48. The refusal of the municipal judge, with all the facts he had before him, to direct the simple inquiry to the municipal clerk as to whether or not the bond had actually been posted with the Circuit Court Clerk, can lead to no other reasonable conclusion than that the municipal judge designedly abstained from inquiry with the purpose in view of avoiding notice.
That a judge may be civilly liable for acts done without the scope of his jurisdiction is recognized in Beckham v. Cline, 151 Fla. 481, 10 So.2d 419, 422, 145 A.L.R. 705; the Court saying, "Immunity does not apply to protect a judicial officer in a case where such officer causes the arrest and detention of a person in a proceeding in which he is acting without jurisdiction." The principle is treated with more elaboration in Rammage v. Kendall, 168 Ky. 26, 181 S.W. 631, 634 L.R.A. 1916C, 1295, wherein it is said: "There is a general principle of universal application to all grades of judicial officers that a judge who is proceeding within the scope of his jurisdiction is not liable in an action for damages for the opinion he may deliver as *538 such judge, nor for any rule or action he may take for the conduct of the business of his court. This principle, however, does not extend to make a judicial officer immune from damages for illegal acts which result in injuries to others or deprive them of their legal rights, when his acts are without the scope and limits of his jurisdiction. It follows that, if his illegal acts are without the scope and limits of his jurisdiction, he is liable, if damages result to others from such acts, whether he is actuated by malice, corrupt and impure motives or not. In the last state of case the fact that his motives are impure and bad are considered only as aggravating the damages. When the judge acts illegally without the limits of his jurisdiction, he becomes a trespasser, and is liable in damages as such. (Cases cited.)" See also De Courcey v. Cox, 94 Cal. 665, 30 P. 95; Stuart v. Chapman, 104 Me. 17, 70 A. 1069; Manning v. Ketcham, 6 Cir., 58 F.2d 948; Brown v. Larimer, 132 Kan. 81, 294 P. 906; Harkness v. Hyde, 31 Idaho 784, 176 P. 885; McCarg v. Burr, 186 N.Y. 467, 79 N.E. 715; Hazen v. Creller, 83 Vt. 460, 76 A. 145; Heller v. Clarke, 121 Wis. 71, 98 N.W. 952; Pomeranz v. Class, 82 Colo. 173, 257 P. 1086; 13 A.L.R. 1345, 1351; 35 C.J.S., False Imprisonment, § 44(d), p. 571.
The reason for the rule is stated in Cooley on Torts (3rd Ed.), pages 805, 806, as follows: "A judge is not such at all times and for all purposes: when he acts he must be clothed with jurisdiction; and, acting without this, he is but the individual falsely assuming an authority he does not possess. The officer is judge in the cases in which the law has empowered him to act, and in respect to persons lawfully brought before him; but he is not judge when he assumes to decide cases of a class which the law withholds from his recognizance, or cases between persons who are not, either actually or constructively, before him for the purpose."
It is next contended by the appellant that a judgment for punitive or exemplary damages cannot stand for the reason that personal malice on the part of the municipal judge toward the person arrested was not shown.
The answer to this contention is that malice, as used in cases which allow recovery for exemplary damages where the imprisonment is actuated by malice, does not necessarily mean anger or a malevolent or vindictive feeling toward the plaintiff. A wrongful act without reasonable excuse is malicious within the legal meaning of the term. See 22 Am.Jur., False Imprisonment, § 132, p. 439; also Anno. 49 A.L.R. 1386; Collins v. Cody, 95 N.J.L. 65, 113 A. 709; Thompson v. St. Louis-San Francisco Ry. Co., Mo. App., 3 S.W.2d 1033; Schuler v. Hughes, Mo. App., 52 S.W.2d 453; Oliver v. Kessler, Mo. App., 95 S.W.2d 1226; Jones v. Hebdo, 88 W. Va. 386, 106 S.E. 898; Sokol Bros. Furniture Co. v. Gate, 208 Ala. 107, 93 So. 724. Under this rule, there was no error in instructing the jury on the law relative to punitive damages; and, if such damages were included in the verdict rendered by the jury, the finding was warranted by the evidence.
It is contended by the appellant that certain charges given by the trial court to the jury were erroneous and hence that the judgment should be reversed and a new trial awarded. The general rule is that where it appears from the whole record that an alleged misleading charge could not have reasonably influenced the verdict to the injury of the party complaining a new trial on that ground should not be granted. Georgia Southern & F. Ry. Co. v. Hamilton Lbr. Co., 63 Fla. 150, 58 So. 838; Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133; Winthrop v. Carinbas, 142 Fla. 588, 195 So. 399; Louisville & N.R.R. Co. v. Willis, 58 Fla. 307, 51 So. 134. We think the rule applicable to the case at bar.
All other contentions made by the appellant have been duly considered and are found to be without merit.
The judgment appealed from should be affirmed.
It is so ordered.
TERRELL, CHAPMAN, THOMAS, MATHEWS and HOBSON, JJ., concur.
ROBERTS, J., dissents.