RESTANI, Judge,
concurring in part and dissenting in part:
I agree that the district court properly dismissed GEO from the lawsuit and that employees of a private corporation operating a federal prison are federal government actors. I conclude, however, that we would err by creating a split in the law of the various circuits by holding that a prisoner may maintain a cause of action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against such employees where adequate state law remedies exist. Until now, the federal circuits that have addressed the issue have held correctly that a prisoner *869 may not maintain such an action. See Alba v. Montford, 517 F.3d 1249 (11th Cir.), cert. denied, — U.S. -, 129 S.Ct. 632, 172 L.Ed.2d 619 (2008); Holly v. Scott, 434 F.3d 287 (4th Cir.), cert. denied, 547 U.S. 1168, 126 S.Ct. 2333, 164 L.Ed.2d 849 (2006); Peoples v. CCA Det. Ctrs., 422 F.3d 1090 (10th Cir.2005), vacated in relevant part and affd by equally divided en banc panel, 449 F.3d 1097 (10th Cir.2006) (per curiam), cert. denied, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2006) and 549 U.S. 1063, 127 S.Ct. 687, 166 L.Ed.2d 534 (2006). The evolution of the U.S. Supreme Court’s Bivens jurisprudence confirms that this Court should follow their lead.
I. The Supreme Court has limited Bivens to cases in which no alternative remedy is available against the federal actor who committed the wrong.
The majority overlooks the reality that the Supreme Court has recognized Bivens causes of action only where federal officials, by virtue of their position, enjoy impunity, if not immunity, from damages liability because of gaps or exemptions in statutes or in the common law. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). In Bivens, the Supreme Court recognized an implied cause of action for damages under the Fourth Amendment against federal agents who illegally searched the plaintiffs home and arrested him. 403 U.S. at 389, 397, 91 S.Ct. 1999. The Court acknowledged that a trespass tort action, which requires resistance that the plaintiff could not lawfully exert against federal agents, was unlikely to succeed because the agents obtained permission to enter the home. Id. at 394-95, 91 S.Ct. 1999.
The Supreme Court has only extended Bivens twice, “to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer’s unconstitutional conduct.” Malesko, 534 U.S. at 70, 122 S.Ct. 515. First, the Court recognized a Bivens action under the equal protection component of the Fifth Amendment Due Process Clause against a former Congressman who had fired one of his employees based on her sex, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), because the employee “lacked any other remedy for the alleged constitutional deprivation,” Malesko, 534 U.S. at 67, 122 S.Ct. 515. As the statute protecting federal employees from sex-based discrimination, 42 U.S.C. § 2000e-16(a), does not extend to such congressional employees, and the employee did not have any cause of action under state law, “there [were] available no other alternative forms of judicial relief.” Davis, 442 U.S. at 245 & n. 23, 247, 99 S.Ct. 2264. Davis, like Bivens, involved “a plaintiff in search of a remedy.” Malesko, 534 U.S. at 74, 122 S.Ct. 515; see Davis, 442 U.S. at 245, 99 S.Ct. 2264 (“For Davis, as for Bivens, it is damages or nothing.” (internal quotation marks and citation omitted)). In both cases, “the plaintiffs’ injuries would have gone entirely unredressed without an implied constitutional remedy.” Holly, 434 F.3d at 295.
Second, the Supreme Court held that a prisoner could bring a Bivens action under the Cruel and Unusual Punishments Clause of the Eighth Amendment against federal prison officials because the prisoner’s only alternative remedy was a claim under the Federal Tort Claims Act (“FTCA”) against the United States. Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Although the FTCA applies only in instances where a private person would be liable under state law, 28 U.S.C. § 1346(b)(1), it precluded state tort actions against the individual federal officers, Holly, 434 F.3d at 296; *870 see 28 U.S.C. 19718 § 2679(b)(1). Reasoning that actions against the United States under the FTCA would not sufficiently deter unconstitutional acts by individuals,' the Court recognized a Bivens action “to provide an otherwise nonexistent cause of action against [the individuals].” Malesko, 534 U.S. at 70, 122 S.Ct. 515; see also id. at 74, 122 S.Ct. 515 (noting that the prisoner in Carlson sought “a cause of action against an individual officer, otherwise lacking”).
Thus, the Supreme Court has recognized Bivens claims only “for want of other means of vindication,” as “Davis had no other remedy, Bivens himself was not thought to have an effective one, and in Carlson the plaintiff had none against Government officials.” Wilkie v. Robbins, 551 U.S. 537, 555, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007). As the majority notes, the Court has set forth two-step test to determine whether to recognize new Bivens actions:
In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a Bivens remedy is a subject of judgment: “the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.”
Id. at 550, 127 S.Ct. 2588 (citations omitted). Since Carlson, however, the Court has “consistently refused to extend Bivens liability to any new context or new category of defendants.” Malesko, 534 U.S. at 68, 122 S.Ct. 515 (declining to recognize a Bivens action against a private corporation operating a federal prison).
II. The justifications for recognizing Bivens actions do not apply here.
A. Adequate alternative remedies are available to Pollard.
Here, ordinary state tort remedies for negligence or medical negligence against the GEO employees are an adequate, alternative, existing process for protecting Pollard’s interest. Where, as here, the plaintiff has an alternative remedy against a federal official alleged to have acted unconstitutionally, the Supreme Court has “consistently rejected invitations to extend Bivens.” Malesko, 534 U.S. at 70, 122 S.Ct. 515. Unlike Bivens, in which alternative state tort remedies were inadequate because the plaintiffs lack of resistance to the federal agents foreclosed a trespass action, Pollard’s “claim of negligence or deliberate indifference requires no resistance to official action.” Id. at 74, 122 S.Ct. 515. Additionally, employees of private prison corporations do not enjoy impunity or immunity as to damages because of gaps or exemptions in statutes or in the common law.
In fact, as the majority concedes, tort remedies for negligence and medical negligence may be even more easily obtained than remedies under Bivens for an Eighth Amendment violation “because the heightened ‘deliberate indifference’ standard of Eighth Amendment liability would make it considerably more difficult for [a plaintiff] to prevail than on a theory of ordinary negligence.” [1] Malesko, 534 U.S. at 73, 122 *871 S.Ct. 515 (citations omitted). Thus, Pollard does not lack effective remedies because his “alternative remedies are at least as great, and in many respects greater, than anything that could be had under Bivens.” Id. at 72, 122 S.Ct. 515. The state tort remedies for negligence or medical negligence are therefore a more than adequate alternative, existing process for protecting Pollard’s interest. See id. at 72-74, 122 S.Ct. 515 (declining to recognize a Bivens action under the Eighth Amendment where the plaintiff had alternative remedies under state tort law for negligence and remedial mechanisms established by the Bureau of Prisons (“BOP”)).[2]
B. The availability of tort remedies is a convincing reason to refrain from recognizing a new damages remedy.
The availability of a superior alternative remedy is a convincing reason for the Judicial Branch to refrain from providing a new, freestanding damages remedy. See Holly, 434 F.3d at 295. Courts are reluctant to recognize new Bivens actions, which are implied without any Congressional authority, because “ ‘a decision to create a private right of action is one better left to legislative judgment in the great majority of cases.’ ” Id. at 289 (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 727, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004)); see also Malesko, 534 U.S. at 67 n. 3, 122 S.Ct. 515 (“[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one.”). Rather, “[s]o long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreelose[] judicial imposition of a new substantive liability.” Malesko, 534 U.S. at 69, 122 S.Ct. 515. “The dangers of overreaching in the creation of judicial remedies are particularly acute where such remedies are unnecessary.” Holly, 434 F.3d at 295. Because a Bivens action is unnecessary against the employees of a private prison corporation, we should not recognize such an action.[3]
III. The availability of a state tort remedy may preclude a Bivens action.
The majority’s conclusion that the availability of state remedies is not a convincing reason for the judiciary to refrain from recognizing a Bivens remedy is based on the faulty premises that remedies that preclude Bivens must (1) be crafted by Congress and (2) “appl[y] uniformly throughout the republic.” Castaneda v. United States, 546 F.3d 682, 701 (9th Cir.2008), rev’d on other grounds sub nom. Hui v. Castaneda, — U.S. -, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010). The first is wrong because the Supreme Court actually has considered remedies not crafted by Congress, and Malesko itself is one instance in which the Court declined to recognize a Bivens action because of state remedies. The second is wrong because the need for uniformity is not particularly compelling where the persons who harmed *872 the plaintiff are private employees of a private entity.
A. The Supreme Court has declined to recognize a Bivens action because of state remedies.
Recent Supreme Court precedent makes clear that a state tort remedy may be an alternative, existing process that precludes recognition of a Bivens action. In Malesko, the Court “considered] availability of state tort remedies in refusing to recognize a Bivens remedy.” Wilkie, 551 U.S. at 551, 127 S.Ct. 2588. The Court also has “rejected the claim that a Bivens remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court.” Malesko, 534 U.S. at 69, 122 S.Ct. 515. Thus, an alternative remedy need not be a federal remedy. See id.; Alba, 517 F.3d at 1254.
There is some tension between Malesko and other recent Supreme Court cases, and Carlson, which suggested that the only kind of alternative remedy that could defeat a Bivens claim was one provided by Congress “which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.” Carlson, 446 U.S. at 18-19, 100 S.Ct. 1468; see also Peoples, 422 F.3d at 1097, 1102 (noting that recent cases suggest that Bivens is presumptively unavailable, whereas Carlson suggested that a Bivens claim is presumptively available). The tension, however, can be resolved by understanding the Carlson formulation as a “test for express Bivens preemption” by a statute. Castaneda, 546 F.3d at 689, rev’d on other grounds, — U.S. --, 130 S.Ct. 1845, 176 L.Ed.2d 703. Malesko, which did not involve any statute, did not discuss this test. The Supreme Court has determined that alternative remedies that are not expressly authorized by Congress and are not an equally effective substitute nonetheless may preclude a Bivens remedy. See Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). More recently, in a case in which express statutory preemption was not at issue, the Supreme Court has stated that it will not recognize a new Bivens action if “any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain.” Wilkie, 551 U.S. at 550, 127 S.Ct. 2588 (emphasis added). Finally, even if Carlson and Malesko are truly irreconcilable, we should follow the most recent Supreme Court precedent, Malesko. Holly, 434 F.3d at 303 (Motz, J., concurring in the judgment); Peoples, 422 F.3d at 1102.
The majority’s statement that in Wilkie, the existence of an alternative state remedy alone was not sufficient to preclude a Bivens action, Maj. Op. at 861, is misleading. Rather, in Wilkie, the Supreme Court considered that the plaintiff had “an administrative, and ultimately a judicial, process for vindicating virtually all of his complaints” for torts, improper criminal charges, unfavorable agency actions, and other offensive behavior by the Bureau of Land Management. 551 U.S. at 551, 553, 127 S.Ct. 2588. The Court, however, found that the plaintiff functionally did not have a remedy for his true complaint regarding the agency’s course of dealing as a whole because “the forums of defense and redress open to [the plaintiff] are a patchwork, an assemblage of state and federal, administrative and judicial benches applying regulations, statutes and common law rules.” Id. at 554-55, 127 S.Ct. 2588. It is too much of a stretch to infer, as the majority does, that if the plaintiff had merely complained of one or more torts, the Court would have reached the same result. To the contrary, the Court noted that “when the incidents are examined one by one, [the plaintiffs] situation does not call for creating a constitutional cause of action for want of other means of vindication.” Id. at 555, 127 S.Ct. 2588. Further, *873 the Wilkie Court concluded that, even where the remedies available are a patchwork, the need for a Bivens remedy is not particularly compelling, as “[i]t would be hard to infer that Congress expected the Judiciary to stay its Bivens hand, but equally hard to extract any clear lesson that Bivens ought to spawn a new claim.” Id. at 554,127 S.Ct. 2588.
B. The need for uniformity is not compelling here.
Uniformity of liability is sometimes important to a Bivens analysis. In Carlson, the Supreme Court stated that “the liability of federal officials for violations of citizens’ constitutional rights should be governed by uniform rules” and that “[t]he question whether [an] action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution.”[4] Carlson, 446 U.S. at 23, 100 S.Ct. 1468. Specifically, the Court concluded that a uniform federal rule of survivorship for Eighth Amendment Bivens claims was necessary where one state’s law would permit survival of the claims but another would not. Id. at 23-24, 100 S.Ct. 1468. Essentially, state law previously had dictated whether the prisoner’s claim died with him.
Here, however, the need for uniformity of rules is much less compelling. First, although employees of a private corporation operating a federal prison may be government actors, they are not federal officials and do not have the same immunities as federal officials. Second, ordinary negligence and medical negligence causes of action are already universally available against employees of a private corporation operating a federal prison, and the elements of such common law-derived causes of action are fundamentally the same in every state.
Unlike in Carlson, no individual state law forecloses or extinguishes such actions altogether, although many states have enacted various procedural hurdles and limits on non-economic damages in medical malpractice suits. Castaneda, 546 F.3d at 690-91, rev’d on other grounds, — U.S. -, 130 S.Ct. 1845, 176 L.Ed.2d 703. The majority points to the differences between the California and Oregon statutes of limitations and the fact that Pollard’s medical malpractice claim would be subject to a non-economic damages cap under California law but not under Oregon law. Maj. Op. at 862-63. These differences, however, should not be determinative, as an alternative remedy need not provide complete relief for the plaintiff. See Bush, 462 U.S. at 388, 103 S.Ct. 2404. Rather, as the Eleventh Circuit has held, “[t]hat state procedural rules complicate the filing of a lawsuit does not mean that a plaintiff lacks any alternative remedy for harms caused by an individual officer’s unconstitutional conduct,” and procedural hurdles in filing a state action do not “render state relief unavailable in the same vein in which the Supreme Court held it to be unavailable in Bivens.” Alba, 517 F.3d at 1255 (internal quotation marks and citation omitted); see also Peoples, 422 F.3d at 1104-05 (stating that Supreme Court precedents do not mandate recognition of a Bivens action “simply because an alternative state law claim may be subject to a punitive damages cap to which a federal claim is not”).
*874 IV. Special factors also counsel hesitation in recognizing a new Bivens action.
The availability of an adequate alternative remedy should end the analysis. The court need not look at other special factors, such as whether extending the cause of action would: (1) be feasible, (2) serve Bivens’s deterrence goals, or (3) impose asymmetric liability costs. In any event, these factors do counsel hesitation here and certainly do not counsel in favor of recognizing a new Bivens action, as the majority suggests.
A. Case-by-case Bivens determinations are feasible.
First, although a Bivens action under the Eighth Amendment for prisoners is a workable cause of action that is recognized already, allowing a Bivens action to go forward only where a plaintiff would otherwise have no alternative remedy is not unduly complicated. Rather, the Supreme Court appears to prefer case-by-case determinations of whether adequate alternative remedies exist to a blanket determination that Bivens is available to an entire class of plaintiffs. See Wilkie, 551 U.S. at 550, 554, 127 S.Ct. 2588 (stating that the first step of the Bivens analysis involves determining “whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages” and that the next step involves “weighing reasons for and against the creation of a new cause of action, the way common law judges have always done”). Thus, the Supreme Court has invited federal courts to determine whether an alleged Eighth Amendment violation has a state law analogue and apply Bivens only if there is no such state analogue.
Further, the current system of determining whether a state analogue exists is easy to administer because there is unlikely to be an instance in which an Eighth Amendment violation by a private prison employee is not a tort. An Eighth Amendment violation requires a “ ‘sufficiently serious’ ” condition and “ ‘deliberate indifference’ to inmate health or safety.” Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Tort law similarly imposes a duty of care on jailers or prison employees to protect the life and health of prisoners in their custody and protect the prisoners from foreseeable harm or unreasonable risk of physical harm. See, e.g., Giraldo v. Dep’t of Corr. & Rehab., 168 Cal.App.4th 231, 85 Cal.Rptr.3d 371, 382-87 (2008); Restatement (Second) of Torts § 314A(l)(a), (4), illus. 6 (1965). Breach of this duty may give rise to a negligence claim. See Giraldo, 85 Cal.Rptr.3d at 390.
The majority does not contend that the acts alleged here fall into the category of acts that violate the Eighth Amendment but are not covered by state tort law, and that is not the case. California, Oregon, and every other state recognize the torts of negligence and medical negligence. The tort of negligence also covers Pollard’s allegation that the prison employees deprived him of food while his arms were in casts, as numerous cases recognize that the keeper of a jail has a common law duty to provide prisoners with food. See, e.g., Farmer v. State ex rel. Russell, 224 Miss. 96, 79 So.2d 528 (1955); Richardson v. Capwell, 63 Utah 616, 176 P. 205, 208 (1918); Dabney v. Taliaferro, 25 Va. (4 Rand.) 256 (1826).
There is no reason to think that either federal preemption or the government contractor defense, which the majority mentions, is applicable here. No federal law expressly or impliedly preempts or directly conflicts with a state tort of negligence or medical malpractice here, and federal law *875 does not occupy the field governing private corrections employees’ actions. The government contractor defense is not likely to apply because there is no indication that the United States directed the GEO employees’ treatment of Pollard. See Malesko, 534 U.S. at 74 n. 6, 122 S.Ct. 515 (noting that “[t]he record here would provide no basis for such a defense,” which is available when “the government has directed a contractor to do the very thing that is the subject of the claim”).[5]
Because the conduct at issue here certainly is covered by state tort law, the other examples the majority posits that may violate the Eighth Amendment of the Constitution but may not be covered by tort law are inapposite. In any event, I am not convinced that any of these acts— denying a prisoner access to a toilet and thus exposing the prisoner to human waste for thirty-six hours, depriving a prisoner of basic necessities, completely depriving a prisoner of outdoor exercise for a period of years, and exposing a prisoner to other unhygienic conditions— would not be covered by tort law. Rather, each act involves a clear breach of the duty of reasonable care and would unreasonably jeopardize a prisoner’s health. See Irabor v. Perry County Corr. Ctr., No. 06-0483-BH-C, 2008 WL 1929965, at *2-3 (S.D.Ala. Apr.30, 2008) (holding that a plaintiff had adequate state tort remedies available to redress the denial of “basic necessities such as socks, toilet paper, and soap”); Miller v. Owsley, 422 S.W.2d 39, 43 (Mo.1967) (recognizing that a police officer fails to act with due care if the officer confines a prisoner in an unfit and unsanitary place); Richardson, 176 P. at 208 (stating that the keeper of a jail has a common law duty to keep the jail warm and sanitary); Dabney, 25 Va. (4 Rand.) 256 (holding that under common law, a jailor has a duty to provide a prisoner with necessary supplies, such as fuel for heat and bed covering); see generally M.L. Schellenger, Annotation, Civil Liability of Sheriff or Other Officer Charged with Keeping Jail or Prison for Death or Injury of Prisoner, 14 A.L.R.2d 353, § 9.
B. Recognizing a Bivens action here would not deter individual officers.
Second, as the majority recognizes, state tort liability deters private prison officials from wrongdoing and may even provide more relief for Pollard than the Eighth Amendment would because the deliberate indifference standard for Eighth Amendment claims creates a high bar to hurdle. Maj. Op. at 866-67. This undermines the deterrence analysis. Because “[t]he purpose of Bivens is to deter individual federal officers from committing constitutional violations,” Malesko, 534 U.S. at 70, 122 S.Ct. 515, the purpose of Bivens is not served where, as here, state law already allows for compensatory and punitive damages for the same conduct, Peoples, 422 F.3d at 1105. In such an instance, a Bivens action is unnecessary. See id. Further, it is difficult to see how potential procedural differences in state laws or between the state and federal law would figure into deterrence as a practical matter. As discussed supra, the court should hesitate to create an unnecessary judicial remedy. See Holly, 434 F.3d at 295.
C. Declining to recognize a Bivens action here would avoid concerns about asymmetrical liability costs.
Finally, declining to recognize a Bivens action here would avoid the concerns that *876 the Supreme Court has expressed about imposing asymmetrical liability costs. See Malesko, 534 U.S. at 72, 122 S.Ct. 515. Although declining to recognize a Bivens action would perpetuate an existing public-private asymmetry because Bivens actions are permitted against federal prison employees but not private prison employees, declining to create a Bivens action would not “impose costs on one wrongdoer and not another.” Peoples, 422 F.3d at 1103 (emphasis added). By contrast, recognizing that a plaintiff may pursue both a Bivens action and a tort action against private prison employees may impose asymmetrical liability costs, as a plaintiff currently may assert tort claims against private prison employees, while Bivens actions allow for recovery from federal employees where the FTCA otherwise bars tort claims against them. See Malesko, 534 U.S. at 72-73, 122 S.Ct. 515 (noting that “federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in government facilities”); see also Peoples, 422 F.3d at 1103. Indeed, as the majority notes, plaintiffs may be able to recover from private prison employees more often than from federal prison employees because private prison employees may not be entitled to qualified immunity. See Richardson v. McKnight, 521 U.S. 399, 401, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).
V. Conclusion
I would join with other circuits in concluding that a Bivens cause of action is not available against employees of privately-run prison corporations where, as here, state tort laws provide a remedy. Accordingly, I respectfully dissent in part.

. Pollard could also sue GEO under a respondeat superior theory in tort, even though he cannot pursue a Bivens action against GEO under Malesko. See Lisa M. v. Henry Mayo Newhall Mem’l Hosp., 12 Cal.4th 291, 48 Cal. Rptr.2d 510, 907 P.2d 358, 360 (1995); Chesterman v. Barmon, 305 Or. 439, 753 P.2d 404, 406 (1988) (en banc); see also Alba, 517 F.3d at 1256 n. 7; Holly, 434 F.3d at 296.

. The majority notes that the alternative BOP administrative remedies that were available in Malesko do not appear to be available to Pollard. Maj. Op. at 860 n.12. Malesko, however, only briefly mentioned BOP remedies and actually emphasized the availability of state tort remedies. See 534 U.S. at 72-74, 122 S.Ct. 515. Additionally, BOP remedies are not as relevant as tort remedies to the Bivens analysis because the BOP’s administrative grievance remedies do not include damages. See id. at 74, 122 S.Ct. 515.

. Although we have stated previously that "to the extent that [a plaintiff] sought recovery from individual employees of [a private corporation managing a federal prison], the case had to [be] brought as a Bivens action,” that statement was pure dicta. Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1104 (9th Cir.2004).

. Following Carlson, this Circuit in Castaneda stated that the FTCA is an inadequate alternative to Bivens because "[w]e do not believe that Congress intended to delegate to the states the mechanism by which violations of federally established rights are remedied,” and that ”[w]e are aware of no case holding a remedial scheme that is entirely parasitic on state law to be a substitute for a Bivens remedy.” 546 F.3d at 701, rev’d on other grounds, — U.S. -, 130 S.Ct. 1845, 176 L.Ed.2d 703.

. Because there is no reason to think that these defenses apply, I do not share the majority's concern about the district court’s dismissal of the case pursuant to 28 U.S.C. § 1915A before the defendants made any filing.